PHŒNIX RY. CO. OF ARIZONA v. GEARY et al.

(District Court, D. Arizona. December 27, 1914.)

No. E–11.

STREET RAILROADS (§ 12*)—STATE REGULATION—ORDER REQUIRING DOUBLE TRACK—REASONABLENESS.

An order of a state corporation commission requiring a street railroad company to double-track a portion of its line in a city of 25,000 population extending ten blocks and to connect with another portion in the business section already having a double track *held* not shown to be unreasonable, and a preliminary injunction to restrain its enforcement denied; but the company *held* entitled to the continuance of a temporary restraining order to prevent the enforcement of the extreme penalties imposed by statute for failure to obey the order until it should have a reasonable time to comply therewith.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 14, 19; Dec. Dig. § 12.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the Phœnix Railway Company of Arizona against W. Paul Geary, Frank A. Jones, and Amos W. Cole, members of the Corporation Commission of the State of Arizona, George P. Bullard, Attorney General for Arizona, and Frank H. Lyman, County Attorney for Maricopa County, Ariz. On motion for preliminary injunction. Denied.

Chalmers & Kent, of Phœnix, Ariz., for complainant.

G. P. Bullard, of Phœnix, Ariz., for defendants.

Before MORROW, Circuit Judge, and VAN FLEET and SAW-TELLE, District Judges.

MORROW, Circuit Judge (orally). In this case it appears from the complaint and affidavits filed in its support that the Phœnix Railway Company of Arizona owns and operates a system of street railways in the city of Phœnix; that a track of this system extends along Washington street in that city from Sixteenth street on the eastern boundary of the city, westerly through the business part of the city to Seventeenth avenue on the west; that commencing at the eastern terminus of the Washington street line, at Sixteenth street, and then running west to Seventh street, a distance of nine blocks, the line consists of a single track; that from Seventh street to Seventh avenue, a distance of fourteen blocks, in the business section of the city the line consists of a double track; that from Seventh avenue to Seventeenth avenue, a distance of ten blocks, the line is a single track, with a switch for a turn-out between Twelfth and Thirteenth avenues for the passage of cars meeting at that point. At Seventeenth avenue the line turns north in front of the State Capitol and runs one block to Adams street and then turns onto and runs along Adams street to Twenty-Second avenue, the western terminus of the road.

The order of the Corporation Commission which is the subject of the complaint in this case requires the complainant to double-track its line from Seventh avenue to Seventeenth avenue, a distance of ten blocks. In the State Capitol immediately west of Seventeenth avenue, to which point the Corporation Commission orders the extension of the double track, is located the offices of the Governor of the state and the Assembly Chambers of the state Legislature, the courtroom of the Supreme Court of the state, and the chambers of its judges, together with the law library of the state. There are also in the State Capitol the offices of the land commissioners, who hold frequent sessions, the Corporation Commission, the defendant in this case, the state tax commissioners, the Secretary of State, and the Attorney General, with their assistants and clerks. All these people are dependent upon this single-track railway from the Capitol to Seventh avenue in the direction of the business portion of the city of Phœnix. From Seventh avenue eastward to the business portion of the city the track is a double track. On Washington street between Tenth and Twelfth avenues is located the public library and its park, frequented by the people of Phœnix. In the vicinity of the State Capitol there is an estimated population of from 1,200 to 1,500. The city of Phœnix as a whole is

estimated to have a population of 25,000. For these people employed at the Capitol and living in that neighborhood, a reasonably quick service is required to and from the business portion of Phœnix. The affidavits before us set forth that there are delays in the transit of the cars over the single track of the railway, by reason of the fact that there is but a single turnout for this track between Seventh avenue and Seventeenth avenue; that a car going either east or west arriving at the turnout between Twelfth and Thirteenth avenues ahead of a car going in the opposite direction must wait until the other car arrives at the turnout.

It appears to the court from the evidence that this is a real, substantial inconvenience to the public residing in and frequenting that part of the city of Phœnix in and around the Capitol and the public library, and we believe it to be the duty of the complainant upon the showing made upon this motion to comply with the order of the Corporation Commission and double-track this line from Seventh avenue to Seventeenth avenue, so that the inconvenience of delays may be avoided.

It appears that the cost of the double trackage will only amount to about $13,000; that the value of the company's street railway property in Phœnix is something like $500,000. We think it would be no great hardship upon the complainant to make this improvement.

In a growing, prosperous city like Phœnix, where the population is steadily on the increase, the complainant might very properly keep well up and abreast of the actual requirements of the population. The complainant is a public service corporation, and there is, of course, something due to the convenience of those who are compelled to use the complainant's line for transportation, to those who are employed in the State Capitol, and to those who find it necessary to visit it on either business or pleasure. In addition, there is the public library and its park on Washington street between Tenth and Twelfth avenues. The convenience of those who use the car line in visiting the library ought to be considered. Then there is a population of 1,200 or 1,500 in the neighborhood of the Capitol. Many of these people must go to the business section of Phœnix every day. This car line is their method of transportation, and any delay in meeting cars at the turnout must be a great and perhaps at times serious inconvenience. A double track would enable each car to pass on its way without any delay at the turnout between Twelfth and Thirteenth avenues, instead of waiting for the car passing in the opposite direction. We are of opinion that the complainant has not made a sufficient showing to prevent the enforcement of this order of the commission. The Corporation Commission is authorized by section 36, c. 90, of the Statutes of the state (act approved May 28, 1912, Session Laws of Arizona 1912, p. 521), to require public service corporations (after hearing) to make additions, extensions, repairs, or improvements to, or changes in the existing plant, equipment, apparatus, facilities, or other physical property of the corporation, to promote the security or convenience of the public. The order under consideration was made after a hearing, and there is a presumption in favor of its reasonableness. In our opinion that presumption has not been overcome in the showing that has been made

upon this hearing. But in view of the heavy penalties provided by the statute for the failure of any public service corporation to comply with its terms or the orders of the Corporation Commission, we are not prepared to dismiss the bill. We think jurisdiction should be retained by the court to see that no injustice is done the complainant while complying with the order. We have every confidence in the present Attorney General, and have no doubt that so long as he remains in office he will deal reasonably and justly with the corporation pending its compliance with the order. But the affairs of men are uncertain. The present Attorney General may not remain in office. He may be called elsewhere, and some one else in that office may seek to enforce the penalties of the statute against this corporation while it is proceeding in good faith to comply with the order. We are dealing with a statute and not with individuals. The corporation should have sufficient time to lay the double track ordered by the commission. It cannot be done in a day. Material may have to be procured from a distance and it may be hard to secure deliveries. We know that as a general rule steel rails cannot be delivered promptly upon the order being given for them. We are of the opinion that the Attorney General and the counsel for the complainant can agree upon a reasonable time for complying with the order of the commission, and such agreement will be made an order of this court. The jurisdiction of the court is invoked, as in the Pacific Gas & Electric Cases, just decided, upon the ground that the penalties of the statute are so severe and cumulative for noncompliance with the order of the commission that the complainant cannot take any chances with its provisions except under the protection of the court, and this protection we think we should give under the circumstances.

The parties will prepare orders in accordance with the views of the court as stated.

Mr. Bullard: I understand your honors' order in this particular case is that the motion for an interlocutory injunction is denied, but that the restraining order is kept in force?

Judge MORROW: Yes, the restraining order is kept in force until further order of the court. But that is only restraining the Corporation Commission from enforcing the pains and penalties.

Judge VAN FLEET: And, Gen. Bullard, there will be no difficulty about yourself, representing the commission, and the attorneys for the complainant, agreeing upon a stipulation as to the time when the company shall commence the work and the time within which the work shall be completed.

Mr. Bullard: That is what I was trying to arrive at; if we agree upon that time, then upon the expiration of that time the restraining order becomes automatically dissolved.

Judge MORROW: Yes, automatically dissolved and the case dismissed.

Mr. Kent: I very much regret to appear in the light of a bad loser, but I am compelled, if your honors please, to enter a notice here formally in the record of an appeal from your honors' determination in this matter directly to the Supreme Court of the United States as provided for by statute, and to ask such relief in respect to a stay of pro-

ceedings as your honors may see fit to grant. And without taking more than just a few minutes of your time I want to explain to your honors. why it is necessary to take that action. . In this case, as in many cases, there is much behind the record; there are many facts and circumstances in this case that are not proper for me to say, even now that your honors have decided this, inasmuch as Judge SAWTELLE will eventually have to try this case. If this were a mere matter of spending $13,000 to double-track this road, I would bow to your honors' decision, for I have great respect, as your honors know, for your integrity and your wisdom; but there is much more than just this matter of double-tracking these ten blocks behind this case, and much more than the mere matter of paving these ten blocks. I can state this, and it is perfectly proper to state it because it enters into the reasons why we are going to be compelled to exhaust every legal resource that we have to avoid complying with this particular order in this case, and which we must do with all respect to your honors; I appreciate that your honors have attempted to make something in the nature of a compromise here, but if your honors—

Judge MORROW: No, it is hardly that. We do not think the showing is sufficient. That is all. So far as the appeal is concerned, that is entirely agreeable to us.

Mr. Kent: I would like to say a word to your honors as to the reason why we will have to take this appeal. We want some sort of a stay of proceedings in this case so that we can take the matter to the Supreme Court of the United States. We have other trackage in Phœnix. We have, where this line diverges at Seventh avenue, a line that runs out Seventh avenue and Grand avenue to the Fair Grounds. There is much greater reason for double-tracking that line running out to the Fair Grounds than there is for double-tracking the line involved in this case. We have an annual fair down there at Phœnix, and for a week at that time it is impossible to take care of the crowds.

Judge MORROW: Judge VAN FLEET desires to be excused, Mr. Kent, in order to proceed with his calendar.

Mr. Kent: I should very much like to have Judge VAN FLEET remain here to listen to this statement; it will not take more than two or three minutes to make it. And we have a Second avenue line, a single track, and the Brill line, a single track. If your honors had had time to read the evidence presented to the Corporation Commission, you would have found that it had, upon the complaint of six or eight persons who say they have been inconvenienced, entered an order requiring us to double-track this particular line. We cannot contest that in the state courts. We cannot hereafter contest it in the federal court because this decision will be quoted against us as a precedent. Your honors undersand that this decision ends the case—

Judge SAWTELLE: Oh, no; you cannot assume that this court will sustain the commission if they order you to double-track all those lines.

Mr. Kent: Why not? You have sustained it here now when only six or eight people have said it was an inconvenience.

Judge SAWTELLE: Our decision is not based on the fact that six

or eight people have said that it was an inconvenience. We have concluded that upon the showing made here this court cannot say that the order of the Corporation Commission is an unreasonable order.

Judge VAN FLEET: Yes, that is all we have concluded.

Mr. Kent: This will be a precedent for the next time.

Judge VAN FLEET: It cannot be a precedent for a case based on different circumstances. We do not hold that you have no right to appeal to the federal courts for relief; we simply say that your showing here is not sufficient.

Mr. Kent: That is exactly what we are complaining of. We never can have a showing that is more complete than our showing here. Six or eight people say it is an inconvenience; we have shown by the schedules that the cars have run absolutely on time except perhaps in one or two instances. We never could have a more complete showing.

Judge MORROW: Well, we differ with you, Mr. Kent, upon that feature of the case.

Judge SAWTELLE: There is no state of facts that can serve as a precedent to a court in deciding a question of law unless the second set of facts presented in the second case are absolutely identical with those in the first case.

Mr. Kent: We want an order, if your honors will grant it, in some way staying these proceedings until we can take this appeal.

Judge MORROW: We will do that. That has been done heretofore. Matters have heretofore been stayed in order to allow of an appeal to the Supreme Court. The courts have approved such a course.

Mr. Kent: Yes, your honor; it seems to be within rule 36 of the Supreme Court.

Judge MORROW: What amount of bond would you suggest?

Mr. Kent: We already have a bond on the temporary restraining orders. Would your honors allow the temporary restraining order to remain in force pending this appeal?

Judge SAWTELLE: What was the amount of the bond on the restraining order?

Mr. Kent: $2,000.

Judge SAWTELLE: It seems to me there should be a larger bond than that.

Judge MORROW: We will fix the bond at $5,000.

Mr. Kent: Then the order will be denying the application for an injunction, but the restraining order will be continued in force pending an appeal to the Supreme Court, and the bond will be in the sum of $5,000.

Judge MORROW: Yes, providing that the appeal is taken within 30 days.

Mr. Kent: There will be no trouble about that, except perhaps the question of printing. We will be perfectly willing to say 30 days, and, if there is any difficulty about it, I suppose we will have no trouble in getting an extension.

Judge MORROW: Very well.