[Civil No. 1703.    Filed February 25, 1920.]

[187 Pac. 933.]

# PHOENIX RAILWAY COMPANY OF ARIZONA, a Corporation, Appellant, v. WILLIAM B. LOUNT and HATTIE L. MOSHER, Appellees.

1. STREET RAILROADS—CORPORATION COMMISSION MAY AUTHORIZE ABANDONMENT OF PORTION OF STREET RAILWAY LINE.—Though a street railway franchise was granted by a city, the Corporation Commission had power thereafter, under Constitution, article 15, sections 3 and 6, and Civil Code of 1913, title 9, chapter 11, to order the company to change the routes of certain of its lines and authorize abandonment of a portion of a line, and such order was ample

---

1. For authorities relating to control of Public Service Commission over abandonment of street railway lines, see note in 5 A. L. R. 55.

authority for abandonment by the company of said portion; franchise not being inviolable except upon mutual consent of immediate parties thereto.

2. MUNICIPAL CORPORATIONS—STATUTORY AUTHORITY OF CITY AUTHORITIES OVER PUBLIC UTILITIES.—The proviso of section 2361, Civil Code of 1913, that within the confines of municipal corporations the use. and occupation of streets and thoroughfares shall be subject to control and regulation by the municipal authorities, was not inserted for the purpose of conferring power upon city authorities over public utilities, but for the sole purpose of limiting the power of boards of supervisors to the granting of rights of way over public highways outside of incorporated cities and towns.

3. STATUTES—SUBJECT MATTER NOT EMBRACED IN TITLE.—If proviso in section 2361, Civil Code of 1913, as to streets and thoroughfares within municipal corporations being subject to control by municipal authorities, was intended as affirmative legislation granting general power to the municipality to regulate and control public service corporations operating therein in the use of streets, it was not pertinent to the title of the act, and violative of Constitution, article 4, section 13.

4. MUNICIPAL CORPORATIONS—RIGHT TO GRANT FRANCHISE VESTED IN MUNICIPALITY.—The right to grant franchises to public utilities to occupy the streets and alleys of incorporated cities and towns is vested in the municipal authorities.

5. MUNICIPAL CORPORATIONS—AFTER FRANCHISE GRANTED PUBLIC UTILITY SUBJECT TO SUPERVISION OF CORPORATION COMMISSION.—It is after the public utility has secured its rights and privileges and franchises, including those of occupying the streets and alleys of a municipality, that the power of supervision over the public utility by the Corporation Commission is intended to be operative and controlling.

6. STREET RAILROADS—PREVIOUS STATUTE REGULATING UTILITIES INEFFECTIVE WHEN IN CONFLICT WITH CONSTITUTION AND LAWS AFFECTING POWERS OF CORPORATION COMMISSION.—Civil Code of 1913, paragraph 1897, subdivision 7, cannot be a limitation on powers of the Corporation Commission, the provision as to power of cities with reference to regulating and operating street railways, etc., being found in Revised Statutes of 1901, paragraph 465, when there was no Corporation Commission, so that if its terms are in conflict with the Constitution or the laws affectng the powers of the Corporation Commission it would have to give way.

7. STREET RAILROADS—CORPORATION COMMISSION'S DECISION PERMITTING ABANDONMENT OF LINE NOT SUBJECT TO COLLATERAL ATTACK.—In suit to compel a street railway company to operate its cars over a portion of its line, the order of Corporation Commission, which had jurisdiction, authorizing the company to abandon such portion, whether right or wrong, is conclusive (Civ. Code 1913, par. 2341).

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Remanded, with directions to dismiss.

Messrs. Chalmers, Stahl, Fennemore & Longan (Mr. W. E. Ryan on the Brief), for Appellant.

Mr. J. B. Woodward and Miss Alice M. Birdsall, for Appellees.

ROSS, J.—In July, 1892, the city of Phoenix granted to J. O. Dunbar a franchise to enter upon its streets for the purpose of constructing, operating and maintaining an electric railway. This franchise was thereafter assigned to the appellant, which, in due course, accepted the terms and conditions thereof and entered upon their performance by laying tracks upon certain streets and operating cars thereon for public service. The service was first established on Washington Street, a main thoroughfare extending easterly and westerly through the city. Thereafter, in 1895, the appellant constructed a line, herein called the Brill line, beginning at the junction of Washington Street, running thence north along First Street to Pierce Street and along Pierce easterly to Tenth Street, thence north along Tenth Street to McDowell Road; and established and maintained service thereon continuously until August 17, 1916. On the last-mentioned date it ceased to operate its cars on that portion of the Brill line on First and Pierce Streets, and later took up the track thereon.

The appellees, who were the plaintiffs below, brought *mandamus* to compel the defendant railway company to continue to operate its cars over the Brill line on First and Pierce Streets.

The appellant set forth in its answer as a defense certain orders of the Corporation Commission directing it to change the routes of certain of its lines,

among others the Brill line. The last order, dated July 11, 1916, also authorized the abandonment of a portion of the Brill line. These defenses were held bad upon demurrer to the answer, and were stricken upon motion from the amended answer.

The court heard evidence upon the issues left, and entered judgment that a peremptory writ of *mandamus* be directed against appellant.

The controversy involves the power of the Corporation Commission to make the orders relied upon by the appellant as justification of its action in making the changes; it being contended by appellant that the commission had such power, and by appellees that it did not have such power and that therefore its orders were null and void. We will consider the case upon the two main propositions submitted by appellees. They are: First. That the Constitution and laws of the state have not changed or affected the power of municipalities to grant public utilities the use and occupancy of streets and to prescribe the regulation of such use and occupancy. Second. That the franchise in this case constituted a contract between the appellant and the city of Phoenix, "the terms of which could only be abrogated by mutual consent, and that appellant could not abandon a portion of its system without first obtaining consent of the sovereign power granting it the right to operate, in this instance, the municipal authorities of the city of Phoenix."

The decision of the questions involves a search into article 15 of the Constitution, entitled "The Corporation Commission," and chapter 11, title 9, Civil Code, entitled "Public Service Corporations and Corporation Commission," for the intention as therein expressed of the law-making bodies. The Corporation Commission is a constitutional body. By that instrument it was created, and certain

powers over public utilities specifically conferred upon it, such as prescribing their classifications, just and reasonable rates and charges, and rules and regulations governing them in discharging their business with the public, etc. Section 3, art. 15. In section 6 of the same article it is provided:

"The law-making power may enlarge the power and extend the duties of the Corporation Commission, and may prescribe rules and regulations to govern proceedings instituted by and before it. . . . "

Paragraph 2278 of the Public Service Corporation Act defines the terms used in said act and, among others, defines public service corporations and confers jurisdiction thereof on the Corporation Commission in the following language:

" . . . (z) The term 'public service corporation' when used in this chapter, includes every common carrier, pipe-line corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, water corporation, and warehouseman, as these terms are defined in this section, and each thereof is hereby declared to be a public service corporation and to be subject to the jurisdiction, control, and regulation of the commission and to the provisions of this chapter."

There is so much of the Public Service Corporation Act that it is not possible to set it forth here, but some of the provisions bearing more or less directly upon the question involved we will quote.

Subdivision (b), par. 2289:

"Every public service corporation shall furnish, provide, and maintain such service, instrumentalities, equipment and facilities as shall promote the safety, health, comfort and convenience of its patrons, employees and the public, and as shall be in all respects adequate, efficient, just and reasonable."

Paragraph 2312:

"Whenever the commission, after a hearing had upon its own motion or upon complaint, shall find

that additions, extensions, repairs or improvements to, or changes in, the existing plant, equipment, apparatus, facilities or other physical property of any public service corporation . . . ought reasonably to be made, . . . the commission shall make and serve an order directing that such additions, extensions, repairs, improvements or changes be made . . . in the manner and within the time specified in said order.''

Paragraph 2306:

''Every public service corporation shall obey and comply with each and every requirement of every order, decision, direction, rule or regulation made or prescribed by the commission in the matters herein specified, or any other matter in any way relating to or affecting its business as a public service corporation, and shall do everything necessary or proper in order to secure compliance with and observance of every such order, decision, direction, rule or regulation by all of its officers, agents and employees.''

Paragraph 2307:

''The commission is hereby vested with power and jurisdiction to supervise and regulate every public service corporation in the state and to do all the things, whether herein specifically designated or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction.''

In addition to the powers and duties of the Corporation Commission as indicated in the above excerpts, many others are conferred on that body by chapter 11, title 9. They may order hearings, either on their own motion, or upon petition by interested parties. They may enforce the production of documentary evidence, attendance of witnesses, may make decisions and orders, and prescribe penalties for their disobedience. The power of the Corporation Commission to require this very appellant to double-track its Washington Street line has been recognized and enforced by the highest court of the land. *Phoenix*

*Ry. Co.* v. *Geary,* 239 U. S. 277, 60 L. Ed. 287, 36 Sup. Ct. Rep. 45 (see also, Rose's U. S. Notes).

Viewing the above provisions of the statute and the Constitution as the only law upon the subject, it would seem that no other conclusion could be drawn than that the Corporation Commission was vested with the power to make the order of July 11, 1916, and that such order was ample authority for the abandonment of that portion of the Brill line of which complaint is made by the appellees.

But appellees cite us to other provisions of the Constitution and the statute which they contend control the proposition. They refer to that provision of the Constitution found in section 3, article 15, as follows:

" . . . Provided, that incorporated cities and towns may be authorized by law to exercise supervision over public service corporations doing business therein, including the regulation of rates and charges to be made and collected by such corporations. . . . "

It will be observed this is an exception to the general grant of power and control of the Corporation Commission over public service corporations, and that it may be exercised by the municipalities of the state only when authorized by law. If the legislature has enacted laws conferring power of supervision over public service corporations upon the municipalities of this state, it would follow that the Corporation Commission is deprived of the power and can no longer exercise it. The case of *Yuma Gas, Light & Water Co.* v. *City of Yuma,* 20 Ariz. 153, 178 Pac. 26, involved the question as to whether the city authorities could fix and regulate the price of the electric light company's product, or whether that was one of the functions of the Corporation Commission, and we there announced that the legislature had not by any enactment enabled the city to

perform that function. The case of the *State* v. *Tucson Gas, Electric Light & Power Co.,* 15 Ariz. 294, 138 Pac. 781, involved the question as to whether the rate-fixing power of a public utility was in the Corporation Commission or could be exercised by the legislature. The ruling in that case was that, so far as rate fixing was concerned, the Corporation Commission possessed the paramount power, but that the legislature could, under the proviso in section 3 of article 15 of the Constitution, by proper legislation confer the jurisdiction of rate fixing upon the municipal authorities and thereby deprive the Corporation Commission of that jurisdiction. *Arizona Eastern Ry. Co.* v. *State,* 19 Ariz. 409, 171 Pac. 906, involved the question as to whether an act of the legislature limiting the number of cars in a train was in conflict with the powers conferred by the Constitution upon the Corporation Commission, as found in section 3, article 15, of the Constitution; the railway company contending that this power was by the Constitution placed exclusively with the Corporation Commission. The question was determined adversely to the contention of the railway company upon the broad ground that in section 10, the same article, railways are made to be "subject to control by law," and that while the Corporation Commission might have exercised the power to regulate the number of cars in a train, its power to do so was permissive and not exclusive of the power of the legislative department.

None of these cases, although they are referred to by counsel, can be said to have any direct bearing upon the point here in controversy.

Appellees rely for authority to sustain their. contention that the legislature has left the power of supervision over public utilities within its boundaries to the city of Phoenix upon section 2361 of chapter

12, title 9, Civil Code of 1913.   It is necessary to quote paragraph 2361 in part:

"Every public service corporation organized or authorized under the laws of the state to do any transportation or transmission business within the state, or any person or association of persons engaged in transportation or transmission business within the state, shall have the right to control and operate lines connecting any points within the state and to connect at the state boundary with like lines; provided, that within the confines of municipal corporations the use and occupancy of streets, alleys or other thoroughfares shall be under such rights as may be acquired by franchises according to law, and subject to control and regulation by the municipal authorities; and, provided further, that the use of highways, roads and thoroughfares, except state highways, by public utilities not within the confines of any incorporated city or town, shall be regulated by the board of supervisors of the county, by license or franchise for constructing and operating public utilities along, over and across the said public roads and highways, except state highways, and under such restrictions and limitations and upon such terms as such board of supervisors may provide, and not inconsistent with law or the. order or rules of the Corporation Commission. . . . "

The title of this chapter as it appears in the Code, "Use of Roads and Streets," is somewhat deceptive and misleading because it has no right to be there. This piece of legislation was originally passed as chapter 61, Laws of 1912, and bore the title, "Granting Rights of Way to Public Service Corporations under Regulation and Control of County Boards of Supervisors." This title should have been carried forward into the Code. The substituted title was one proposed by the Code commissioner, but was not approved by the legislature nor was the act amended or revised. This information is contained in the preface to the Code, and our search of the bills on file in the office of the Secretary of State verifies the

statement that chapter 61, Laws of 1912, was in no way amended or changed by the legislature. The history of the chapter is important in this, that the title of the act has everything, or at least very much, to do with the context that follows. The title of the act as originally passed made reference to the granting of rights of way to public service corporations by boards of supervisors over highways of the county under their jurisdiction, and the legislation thereunder was limited to the subject contained in .the title, that is, the boards were empowered to grant such rights of way under the supervision of the Corporation Commission, excepting in municipal corporations; the exception being intended as a limitation of the power of the board. The exception contained in the proviso evidently was not intended as affirmative legislation, that matter not being germane to the title of the act; but was inserted so that the board of supervisors could not claim or exercise a power always recognized as existing in the municipality, to wit, the right to grant franchises to public service corporations to use and occupy its streets, alleys and other thoroughfares, and to control and regulate their use and occupation. The proviso is an exception to the general grant of power conferred on the board, and nothing more.

"The office of a proviso generally is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought within its purview." *Minis* v. *United States,* 15 Pet. 445, 10 L. Ed. 799 (see also, Rose's U. S. Notes).

. It is clear that this proviso was not inserted for the purpose of conferring power upon the city authorities over public utilities, but for the sole purpose of limiting the power of boards of super-

visors to the granting of rights of way over public highways of the county outside of incorporated cities and towns. If it was intended as affirmative legislation granting general power to the municipality to regulate and control public service corporations operating therein in the use of its streets, it was not pertinent to the title of the act, and violative of section 13, article 4, of the Constitution, which provides that—

"Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title."

It would seem that before the court would be justified in holding that the legislature had transferred the power of supervision over public utilities to the municipal authorities, as it is provided in the Constitution the legislature may do, we should have a solemn act of the legislature to that effect, properly entitled, so that the purpose and intention would be clear, evident, and unmistakable. Here we are asked to confirm that power in the municipality upon a proviso in the nature of an exception contained in an act avowedly authorizing the granting of rights of way to public service corporations under regulation and control of county boards of supervisors, with a title that nowhere indicates a purpose in the legislature to pass a law concerning rights of way of public utilities in incorporated cities and towns.

It is now the law, and we believe it has always been in this jurisdiction, that the right to grant franchises to public utilities to occupy the streets and alleys of incorporated cities and towns is vested in the municipal authorities. The grant of the franchise in this case was by the city of Phoenix. We discover no purpose in the Public Service Corporation Act to change or modify that rule; the right to enter upon and occupy the streets by a public utility

being controlled by the local authorities. It is after the public utility has secured its rights and privileges and franchises, including those of occupying the streets and alleys of a municipality, that the power of supervision over the public utility by the Corporation Commission is intended to be operative and controlling. The suggestion by the appellees that subdivision 7 of paragraph 1897, Civil Code, is a limitation or restraint upon the powers of the Corporation Commission cannot be so. Therein it is stated:

' " . . . and also to regulate [referring to the power of cities] the erection of poles and wires, and the laying of street railway tracks, and the operating of street railways in and upon its streets, alleys, public grounds and plazas. . . . "

This provision is found in paragraph 465, Revised Statutes of 1901, long before we had a Corporation Commission, and if its terms were in fact in conflict with the Constitution or the laws thereunder affecting the powers of the Corporation Commission, it would have to give way.

We conclude that the appellant, being a public service corporation, was subject to the jurisdiction, control, and regulation of the Corporation Commission, and that the order of July 11, 1916, permitting appellant to abandon its line on First and Pierce Streets is within the letter and spirit of paragraph 2312, chapter 11, title 9. In *Phoenix Ry. Co.* v. *Geary* (D. C.), 209 Fed. 694, Mr. Justice MORROW found in said paragraph (2312) authority for the Corporation Commission to base an order directing appellant to double-track its West Washington Street line, and if the commission's regulatory powers authorize them to require a street railway company to double-track its lines, we cannot perceive any good reason why the commission could not, if the public necessity and

convenience demanded it, require of a street railway company that it change its route and, if necessary, abandon some portion of its line. This proceeding ignores the action and orders of the Corporation Commission in that regard.

It being evident that the commission had jurisdiction to make the order, the decision was conclusive as against collateral attack as here attempted. Paragraph 2341, Civ. Code. It follows that the court erred in sustaining demurrers to appellant's answer setting up the orders of the commission as justification for its action, unless the other contention of the appellees, to the effect that the franchise contract was inviolable except upon the mutual consent of the immediate parties thereto, is well founded.

It must be borne in mind whatever power the city of Phoenix had to grant the street railway franchise was a power delegated to it by the state; that the city, in and of itself, had no power to grant the franchise, but was acting as an agency of the state. The use and occupancy of streets and highways of the state must always remain subject to the control of the police powers; even the state may not abdicate the control of these highways. If appellee's contention is right, a street railway having once located, under a license to do so, a line of railway upon a street, could not for any reason or on any ground be required to change its location upon the street or on to another street, except upon its consent. In other words, the government would have released all claim to regulate or control the use of its streets. This, of course, is not the law.

"The state in the exercise of its police power, in the regulating control which it has over corporations created by its authority, may exercise a general supervision over such corporations. It may prescribe the location of the tracks, the size and character of the rails, the precautions which shall be

taken for the protection of the public, and the character and style of highway crossings; and no one has ever questioned that it may do whatever is necessary and proper for the public welfare in the control and regulation of the franchises which such corporations have obtained by statutory authority.'' *American Rapid Tel. Co.* v. *Hess,* 125 N. Y. 641, 21 Am. St. Rep. 764, 13 L. R. A. 454, 26 N. E. 919; 12 R. C. L., p. 210, § 34.

Whether the Corporation Commission's decision ordering changes in the plant of appellant, and in permitting appellant to abandon the portion of the Brill line on First and Pierce Streets, was correct or not, we cannot inquire into or determine in this case. The commission had jurisdiction of the subject matter, and its decision, whether right or wrong, whether supported or unsupported by the facts, must stand until set aside upon direct appeal to the courts. The commission being authorized by the Constitution and the laws to regulate, control and supervise public utilities of the state, and to that end being vested with the power to institute and entertain hearings and render decisions therein, its decisions must be given force and effect to the extent expressed in the statute. Neither public utilities nor other parties to proceedings before the commission may ignore the commission's decisions, and proceed to invoke the powers of the court regardless thereof.

Inasmuch as the statute (paragraph 2341) makes the final orders and decisions of the commission conclusive in all collateral actions and proceedings, it follows that the order or decision of July 11, 1916, is conclusive on all persons, whether parties thereto or not, except when attacked or brought into question in a direct action or proceeding. This not being such an action, the plea to the jurisdiction of the court interposed by appellant should have been sustained and the action dismissed.

It is accordingly ordered that the judgment be reversed and the cause remanded, with directions that the complaint be dismissed.

CUNNINGHAM, C. J., and BAKER, J., concur.