610 P.2d 454

**ARIZONA PUBLIC SERVICE COMPA-
NY, a public service corporation,
Plaintiff-Appellee,**

v.

**TOWN OF PARADISE VALLEY, a
municipal corporation,
Defendant-Appellant,**

**Bud Tims, Ernest Garfield and Jim Weeks
as members of and constituting the Ari-
zona Corporation Commission, Defend-
ants-Appellees.**

1 CA–CIV 4228.

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 18, 1979.

Rehearing Denied Nov. 2, 1979.

Review Granted Nov. 20, 1979.

Snell & Wilmer by H. William Fox, Phoenix, for plaintiff-appellee.

Roger A. McKee and Douglas A. Jorden, Paradise Valley, for defendant-appellant.

John A. LaSota, Jr., former Atty. Gen. by Charles S. Pierson, Asst. Atty. Gen., Phoenix, for defendants-appellees.

OPINION

JACOBSON, Judge.

This appeal requires a determination of whether the legislature has delegated to municipalities the authority to pass ordinances affecting the replacing, removal and undergrounding of public utility poles.

This litigation was initiated by appellee, Arizona Public Service Company (APS), by filing a special action in Superior Court seeking to declare an ordinance of the appellant, Town of Paradise Valley (Town), invalid and to enjoin the Town's prosecution of a criminal complaint against APS under that ordinance. The Superior Court held the ordinance invalid as being inconsistent with the constitutional and statutory provisions prescribing the powers of the Arizona Corporation Commission. The Town has appealed.

In 1964, the Town passed Ordinance #30, which in general required new and higher capacity replacement utility lines to be placed underground. While the ordinance is lengthy, its subject matter is "utility poles and wires" which are defined by the ordinance as:

"poles, structures, wires, cable conduit, transformers and related facilities used in or as part of the transportation or distribution of electricity or power or in the transmission of telephone, radio, or television communications."

There is no argument that by this definition the ordinance was intended to affect "utility poles and wires" of public service corporations. APS is a public service corporation delivering electrical power to most of the state.

The ordinance purports to affect only "new utility poles and wires" which are defined as "such utility poles and wires as are not existing utility poles and wires and shall include such utility poles and wires as in the future may constitute replacements for, or repairs to, existing utility poles and wires" with certain exceptions not applicable here.

The operative portion of the ordinance provides:

". . . no person shall erect within the town boundaries and above the surface of the ground any new utility poles and wires except after securing a special permit therefor from the Town Council . . . ."

Failure to comply with the ordinance subjects the offender to criminal penalties.

Apparently APS replaced some existing equipment with equipment having a higher voltage capacity without applying to the Town for a special use permit. As a result of this action, APS was charged with a misdemeanor criminal complaint before the town magistrate. Prior to that criminal action being heard, APS instituted its special action in Superior Court, joining the Arizona Corporation Commission and the Town. The resulting decision of the Superior Court declared the ordinance invalid.

All parties to this appeal correctly characterize the controlling issue to be whether the Town had statutory authority to control the type of facilities utilized by a public service corporation in delivering its services.[1] The Town urges that such authority exists by implication from its general zoning authority (A.R.S. §§ 9–462.01 et seq.); the general grant of authority to control its streets (A.R.S. §§ 9–240 and 9–276); its franchising authority (Art. XIII, § 6, Ariz. Const.; A.R.S. §§ 40–282 and 40–283); and the recognition that such authority exists by such statutory provisions as A.R.S. §§ 40–341 et seq. (providing for undergrounding of utility poles and wires by utilities), and A.R.S. § 40–360 (dealing with high voltage transmission lines). APS, on the other hand, argues that given the general authority vested by the Constitution and statutes in the Arizona Corporation Commission to control public service corporations, these statutes lack the specificity required to vest municipalities with the control necessary to validate the type of ordinance involved here.

Any discussion of the regulation of public service corporations vis-a-vis the state legislature, the Corporation Commission and municipalities must begin with Art. XV, § 3, of the Arizona Constitution. This constitutional provision provides:

"§ 3. Power of commission as to classifications, rates and charges, rules, contracts, and accounts; local regulation

"Section 3. The Corporation Commission shall have full power to, and shall, prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the State for service rendered therein, and make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the State, and many prescribe the forms of contracts and the systems of keeping accounts to be used by such corporations in transacting such business, and make and enforce reasonable rules, regulations, and orders for the convenience, comfort, and safety, and the preservation of the health, of the employees and patrons of such corporations; *Provided, that incorporated cities and towns may be authorized by law to exercise supervision over public service corporations doing business therein, including the regulation of rates and charges to be made and collected by such corporations*; Provided further, that classifications, rates, charges, rules, regulations, orders, and forms or systems prescribed or made by said Corporation Commission may from time to time be amended or repealed by such Commission." (Emphasis added.)

While at one point in our history there were serious questions concerning the authority vested in the legislature to pass

---

1. While the control involved here is with an "undergrounding ordinance", the power involved is not that narrow. Although an "undergrounding ordinance" might be deemed desirable, there is no difference between this ordinance and one which might be passed by Scottsdale, the "West's Most Western Town", requiring all new utility poles to be in a western motif, or a copper producing municipality requiring all new utility poles to be copper-clad. It is not the reasonableness of the ordinance which is involved, but the power to legislate in the area at all.

laws affecting public service corporations, see *State v. Tucson Gas, Electric Light and Power Co.*, 15 Ariz. 294, 138 P. 781 (1914), those questions were resolved by the case of *Corporation Commission v. Pacific Greyhound Lines*, 54 Ariz. 159, 94 P.2d 443 (1939). This case held that the only constitutionally exclusive area of non-legislative action lies in the prescribing of "just and reasonable classifications to be used, and just and reasonable rates and charges to be made and collected by public service corporations . . . ." In this area, the Arizona Corporation Commission had exclusive constitutional control. In all other areas, as is pointed out by *Pacific Greyhound Lines*:

> "the paramount power to make all rules and regulations governing public service corporations not specifically and expressly given to the commission by some provision of the Constitution, rests in the legislature, and it may, therefore, either exercise such powers directly or delegate them . . . ." 54 Ariz. at 176–77, 94 P.2d at 450.

Thus, although the Corporation Commission intimates differently, the question is not whether the legislature has the power to delegate authority to municipalities to regulate delivery facilities of public service corporations, but what form that delegation of authority must take, that is, may it be implied or must the delegation be specific. This question was presented in the case of *Phoenix Railway Co. v. Lount*, 21 Ariz. 289, 187 P. 933 (1920). Since this case falls between *Tucson Gas & Electric* (1914) and *Pacific Greyhound Lines* (1939), the Town and the dissent dismiss this case as no longer representing the law in Arizona. We disagree.

We start with the proposition that the legislature has delegated general supervisory jurisdiction over public service corporations to the Corporation Commission. A.R.S. § 40–202(A) provides:

> "The Commission may supervise and regulate every public service corporation in the state and do all things, whether specifically designated in this title or in addition thereto, necessary and convenient in the exercise of such power and jurisdiction."

Moreover, the legislature has, by extensive, detailed legislation, delegated to the Arizona Corporation Commission broad powers to regulate and control the services and facilities of public service corporations. *See generally* A.R.S. Chapt. 2, Art. 6 of Title 40, "Service and Facilities."

It is against this legislative and constitutional background of authority being vested in the Corporation Commission that the Arizona Supreme Court has consistently held that in the absence of specific legislative authority, municipalities have no authority to regulate the affairs of a public service corporation. *See Northeast Rapid Transit Co. v. City of Phoenix*, 41 Ariz. 71, 15 P.2d 951 (1932) (holding that a municipality could not prohibit a common carrier from operating within its limits when the carrier was authorized by the commission to do so); *City of Phoenix v. Sun Valley Bus Lines*, 64 Ariz. 319, 170 P.2d 289 (1946), holding:

> "When every phase of the relation between public utility and the public rests in the State Corporation Commission to supervise and regulate, it operates to deprive municipalities of such power, and when it attempts to interfere with such delegated power of the commission its ordinances and acts are void." 64 Ariz. at 325, 170 P.2d at 292.

For these reasons, in our opinion, the following statement in *Phoenix Railway Co. v. Lount, supra,* is a correct statement of the relationship which exists between the Corporation Commission, the legislature, municipalities, and public service corporations:

> "It would seem that before the court would be justified in holding that the legislature had transferred the power of supervision over public utilities to the municipal authorities, as it is provided in the constitution the legislature may do, we should have a solemn act of the legislature to that effect, properly entitled, so the purpose and intention would be clear, evident, and unmistakable." 21 Ariz. at 299, 187 P. at 936.

It is against the backdrop of the general regulatory authority vested in the Corporation Commission and the specificity needed to transfer that authority to a municipality, that the statutes cited by the Town in support of its legislature delegation rationale must be analyzed.

■ The first statute cited by the Town in support of its position that the legislature has delegated to municipalities the authority to regulate the delivery facilities of public service corporations is A.R.S. § 9–462.01. This statute simply grants to a municipality the authority to pass zoning ordinances. In particular, the subsections of that statute relied upon by the Town provide that the legislative body of any municipality may:

"1. Regulate the use of buildings, structures and land as between agriculture, residence, industry, business and other purposes.

\* \* \* \* \* \*

"3. Regulate location, height, bulk, number of stories and size of buildings and structures . . . ."

Completely absent from these general zoning provisions is a specific delegation of authority to regulate the delivery facilities of public service corporations. It is nothing more or less than a grant of zoning authority.

■ The Town next cites A.R.S. § 9–240(B)(3), which deals with the power of the municipalities to control, widen, straighten, extend, realign, grade, open, lay out and abandon streets lying within the municipal boundaries. Like the general grant of zoning authority, these statutes lack the specific authority required by *Lount*.

Apparently recognizing this deficiency, the Town next cites A.R.S. § 9–276(5) as granting the necessary authority. This section in its entirety provides that cities may:

"5. Regulate the erection of poles and wires, the laying of street railway tracks,

and the operating of street railways in and upon its streets, alleys, public grounds and plazas."

■ Without resorting to an involved legal analysis, the doctrine of *ejusdem generis* obviously applies to this statute. This doctrine simply states that general words (here, "regulate erection of poles and wires") which are followed by a particular class of persons and things in a statute (here, "street railways") are to be construed as applicable only to persons and things of the enumerated class. *White v. Moore*, 46 Ariz. 48, 46 P.2d 1077 (1935). The broadest possible interpretation of this statute only authorizes a city to regulate the erection of poles and wires of a street railway company.[2] While this may be a specific delegation by the legislature to regulate street railways, it does not specifically authorize the regulation of utility poles and wires belonging to other public service corporations.

■ Finally, the Town relies upon the authority vested in municipalities by the Constitution and statutes to grant franchises to public service corporations. The problem with this argument is that here we are not dealing with franchising rights. APS has an existing franchise from the Town to supply electricity. That document sets forth the respective rights and obligations of the signators. We, therefore, do not need to pass on whether a municipality can properly, as a condition of issuing a franchise, require undergrounding of its utility lines.

In short, the statutes cited by the Town lack both the specificity and the "clear, evident and unmistakable" intent necessary to confer upon the Town the authority to enact the type of ordinance enacted here.

■ Contrary to the Town, which seems to find solace in the legislative enactment of A.R.S. §§ 40–341 et seq., we find that these statutes reinforce the power of the

---

**2.** This interpretation was rejected by *Lount*, based upon the existence of this statute prior to the creation of the Arizona Corporation Commission. The reenactment of this statute after

the creation of the Corporation Commission may cast doubts on this portion of the holding in *Lount*.

Corporation Commission to control the delivery facilities of public service corporations, and establish the legislative public policy of how "undergrounding" of utility services is to be accomplished. These statutes are under an article entitled "Conversion of Overhead Electric and Communication Facilities", and contain a detailed comprehensive plan as to how existing utility lines or new utility lines can be placed underground. The salient points of this statutory scheme are that the power to create the district which will be involved in the undergrounding process and to order the undergrounding is vested in the Arizona Corporation Commission, (A.R.S. §§ 40–343, 40–344), and that the cost of such undergrounding is to be borne, not by the utility, but by the landowners of the district. A.R.S. § 40–347(B). To say that a town ordinance which would require the entire cost of undergrounding to be borne by the public service corporation and divests the Corporation Commission of its power to pass on this issue, is not contrary to A.R.S. §§ 40–341 et seq. is pure sophistry.

■ Finally, the Town points to A.R.S. §§ 40–360 et seq. as reaffirming a municipality's authority to regulate public service corporations. These statutes purport to deal with high voltage transmission lines and the "steel giants" that support those lines. As the preamble to this legislation notes:

> "It is recognized that such facilities cannot be built without in some way affecting the physical environment where the facilities are located. The legislature further finds that it is essential in the public interest to minimize any adverse effect upon the environment and upon the quality of life of the people of the state which such new facilities might cause. The legislature further finds that present practices, proceedings and laws relating to the location of such utility facilities may be inadequate to protect environmental values and take into account the total effect on society of such facilities."

Given the environmental and societal purposes underlying the enactment of these statutes and the impact of these types of structures on these values, the legislature would have been remiss in not giving due regard to master plans of cities and towns in formulating where these structures are to be located. This is a far cry, however, from a recognition by this legislation that cities and towns have authority to regulate and control the delivery facilities of public service corporations.

In summary, we find no legislative delegation of authority to the Town to enact the type of ordinance enacted here.

The judgment of the Superior Court is affirmed.

OGG, C. J., concurs.

SCHROEDER, Judge, dissenting.

The majority holds that municipalities, the governmental units closest and most responsive to the varying needs of specific localities in the state, are without authority to require undergrounding of utility lines. This result is, in my view, unfortunate, and unwarranted by our statutes.

There can be no doubt that early Supreme Court cases typified by *Phoenix Railway Co. of Arizona v. Lount*, 21 Ariz. 289, 187 P. 933 (1920), and *State v. Tucson Gas, Electric Light and Power Company*, 15 Ariz. 294, 138 P. 781 (1914), held that the Corporation Commission was paramount in all matters affecting public service corporations. The cases further held, that, the legislature could not delegate any matter affecting those corporations to local government unless the legislature specifically and expressly divested the Corporation Commission of such power and transferred it to the local government. But it is equally beyond question that the Supreme Court has since rejected those views. In has held that the Corporation Commission's exclusive authority is limited to rates, charges or classifications, and that as to all other matters, paramount authority is in the legislature to take what action it deems appropriate. *Williams v. Pipe Trades Industry Program of Arizona*, 100 Ariz. 14, 409 P.2d 720 (1966); *Southern Pacific Co. v. Arizona Corporation Com-*

mission, 98 Ariz. 339, 404 P.2d 692 (1965); *Corporation Commission v. Pacific Greyhound Lines*, 54 Ariz. 159, 94 P.2d 443 (1939).

The central question then comes down to whether the legislature has authorized municipalities to act in this field. I conclude that it has. The principal general statute to be considered is A.R.S. § 9–462.01 pertaining to zoning which provides that municipalities by ordinance may regulate the "use of buildings, structures and land . . ." and "[r]egulate location, height, bulk, number of stories and size of buildings and structures . . . ." A.R.S. § 9–462.-01(A)(1) and (3). I find no exemption in this general ordinance for public service corporations, and courts in other jurisdictions have upheld utility line undergrounding requirements under municipal zoning authority. *See e. g., Kahl v. Consolidated Gas, Electric Light & Power Co.*, 191 Md. 249, 60 A.2d 754 (1948); *In re Long Island Lighting Company*, 49 Misc.2d 717, 268 N.Y. S.2d 366 (1964).

A still more specific grant of authority to "[r]egulate the erection of poles and wires . . ." is found in A.R.S. § 9–276. Unlike the majority, I do not read this section as limited to poles and wires erected by street railways.

Any doubts, however, which might remain on the question of a town's authority are in my view dispelled by more recent legislative enactments bearing on the placement of utility lines. Far from usurping the authority of towns in this area as the majority suggests, these statutes expressly recognize the town's underlying authority. The 1968 legislation to promote conversion of overhead electrical distribution of telephone facilities from poles to underground systems expressly provides that any underground conversion district must first be approved by resolution of the local government. A.R.S. § 40–344(H).

Other recent legislative action in A.R.S. §§ 40–360 to 40–360.12 establishes a "siting committee" with authority over the placement and construction of high voltage transmission lines. These statutes also rec-ognize the authority of municipalities to act with respect to the placement of lines. A.R.S. § 40–360.06(D) provides that the siting committee may contravene local ordinances only if the committee makes specific findings. The statute states:

> Any certificate granted by the committee shall be conditioned on compliance by the applicant with all applicable ordinances, master plans and regulations of the state, a county or an incorporated city or town, except that the committee may grant a certificate notwithstanding any such ordinance, master plan or regulation, exclusive of franchises, if the committee finds as a fact that compliance with such ordinance, master plan or regulation is unreasonably restrictive and compliance therewith is not feasible in view of technology available.

I find in these statutes clear recognition of the authority of municipalities to act with respect to undergrounding, and I further find no preemptive state policy incompatible with the existing ordinance. In fact, the purpose of the local ordinance complements rather than contradicts the statewide undergrounding legislation.

I am aware that courts considering the validity of ordinances similar to the one at issue here have reached differing results, depending in large measure upon the nature of the specific constitutional and statutory provisions applicable in the various jurisdictions. *See for example*, the following cases upholding an undergrounding requirement: *Kahl v. Consolidated Gas, Electric Light & Power Co., supra; Benzinger v. Union Light, Heat & Power Co.*, 293 Ky. 747, 170 S.W.2d 38 (1943); *Central Me. Power Co. v. Waterville Urban Ren'l. Auth.*, 281 A.2d 233 (Me.1971). *But see: Village of Carthage v. Central New York Telephone & Telegraph Co.*, 185 N.Y. 448, 78 N.E. 165 (1906); *In re Public Service Electric and Gas Co.*, 35 N.J. 358, 173 A.2d 233 (1961); *Cleveland Electric Illuminating Co. v. City of Painesville*, 10 Ohio App.2d 85, 226 N.E.2d 145 (1967) (direct conflict between state statute and municipal action). The majority's decision invalidating this or-

dinance in the circumstances presented here, however, is wholly inconsistent with the overall trend of modern cases which favors undergrounding, *see Sleepy Hollow Lake, Inc. v. Public Service Commission*, 352 N.Y.S.2d 274, 43 A.D.2d 439 (1974), and which permits local regulation in the absence of clear statewide preemptive policy. *See* 7 McQuillin, Municipal Corporations, § 24.588 (3d ed. 1968).

I respectfully dissent.