[Civil No. 3224. Filed November 16, 1932.]

[15 Pac. (2d) 951.]

NORTHEAST RAPID TRANSIT COMPANY, a Corporation, Appellant, v. CITY OF PHOENIX, a Municipal Corporation, Appellee.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Mr. L. C. McNabb, for Appellee.

LOCKWOOD, J.—The city of Phoenix, a municipal corporation, brought suit against Northeast Rapid Transit Company, a corporation, to enjoin it from engaging in intracity business as a common carrier of passengers within the city of Phoenix. The case was tried to the court on an agreed statement of facts, certain documentary evidence, and some undisputed oral testimony, and judgment was rendered granting the injunction as prayed for. From such judgment this appeal was taken.

The facts in the case may fairly be stated as follows: The city of Phoenix is a municipal corporation organized under article 13, section 2, of the Constitution. Defendant is a corporation organized under the laws of Arizona and engaged in the business of a common carrier of passengers for hire. On April 17th, 1929, one C. M. Menderson was general manager of defendant, which was then engaged in business as such common carrier between a point within the city of Phoenix and various points without, conducting only intercity and country business. On that date the Phoenix Motorbus Company and defendant made joint application to the city commission of the city of Phoenix for a right to conduct intracity business as common carriers of passengers, which right was duly granted to *Menderson individually* upon certain terms set forth in the permit. No permit was granted to the motor-bus company or defendant in their corporate capacities, nor was the permit granted Menderson ever transferred to defendant. At some time thereafter Menderson individually made application to the corporation commission for the right to engage in business as a common carrier between Phoenix and the Arizona Biltmore Hotel outside the corporate limits of Phoenix over certain designated

routes. On December 31st, 1930, three certificates of necessity and convenience were granted to him, two of which expressly allowed intraurban service. On April 1st, 1930, upon the petition of Menderson, Order No. 4569 of the corporation commission issued under date of September 8th, 1929, which denied him the right to give intraurban service, was modified to authorize such service. These orders authorizing intraurban service were apparently based by the corporation commission upon the fact that the city of Phoenix had agreed that such service might be granted in the permit aforesaid. No certificate of necessity and convenience, so far as the record shows, was ever issued by the corporation commission to defendant in its corporate capacity, nor was one ever assigned or transferred to it, but Menderson has permitted it to operate over the routes set forth in his certificates without objection. Defendant has been engaged in common carrier passenger service, apparently on the theory that it might operate under the various certificates and permits issued to Menderson in his individual capacity, although such permits and certificates were never transferred by him to it and he has always been the individual owner thereof, so far as shown by the record herein. Neither the permit from the city nor the certificates of necessity and convenience could be assigned or transferred without the consent of the city or corporation commission, and no such consent was ever asked or given.

On the 28th of January, 1931, the city commission revoked the permit theretofore granted to Menderson authorizing intraurban service, and under their instructions on March 6th this action was filed.

On April 18th, 1931, and after the filing of the action, defendant secured from the city tax collector a license to engage in and carry on the business of a

"bus line" within the city of Phoenix for the year ending October 1st, 1931, and on the 2d day of October defendant tendered to the city tax collector the sum fixed by the city ordinances for the reissuance of the bus line license aforesaid, which was refused. Defendant has continued to operate its interurban passenger service in the city of Phoenix up to and including the date of trial of this action.

It is further agreed that the city of Phoenix has never applied to the corporation commission or endeavored to procure it to cancel any of the certificates of necessity and convenience issued by it as aforesaid.

It is the contention of plaintiff that no common carrier of passengers for hire may conduct an intracity business within the limits of the city of Phoenix without a franchise or permit therefor being first obtained from such city, and that none such has been held by defendant since before the commencement of this suit. It is the claim of defendant, on the other hand, that the sole and exclusive jurisdiction over common carriers of passengers for hire, whether within or without the limits of a corporate city, is vested by the Constitution and laws in the corporation commission, and that it has been and is operating its business under and in accordance with the provisions of the certificates of necessity and convenience duly issued by such corporation commission, as aforesaid.

Article 15, sections 2, 3 and 6 of the Constitution of Arizona read in part as follows:

"Section 2. All corporations other than municipal engaged in carrying persons or property for hire . . . shall be deemed public service corporations.

"Section 3. The Corporation Commission shall have full power to, and shall, prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be made and collected,

by public service corporations within the State for service rendered therein, and make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the State . . . ; Provided, that incorporated cities and towns may be authorized by law to exercise supervision over public service corporations doing business therein. . . .

"Section 6. The law-making power may enlarge the powers and extend the duties of the Corporation Commission, and may prescribe rules and regulations to govern proceedings instituted by and before it. . . ."

In pursuance of section 6, *supra*, the legislature adopted sections 736 and 741, Revised Code 1928, which read in part as follows:

"§ 736. Certificate of convenience and necessity; application; hearing; terms of certificate. No person shall operate any motor vehicle for the transportation of persons or property as a common carrier for compensation on any public highway, street or alley in the state, or between any fixed termini, without first having obtained from the commission a certificate of public convenience and necessity. Application for such certificate shall be made to the commission in writing, verified by the applicant and shall specify the name and address of applicant and the names and addresses of its officers, if any. . . . No certificate shall issue until the commission finds that the public convenience and necessity requires it.

"Each certificate shall contain the name of the grantee . . . and such additional provisions and limitations as the commission shall deem necessary. Such certificate may not be assigned or transferred without an order of the commission authorizing such transfer."

"§ 741. Violations; penalty. Every person who violates or fails to comply with, or who aids or abets in the violation of any provisions of this article, or who fails to obey, observe or comply with any order, rule, or requirement of the commission, or any provision thereof, or who aids or abets any person in his

failure to obey any order, rule or regulation or any provision thereof, is guilty of a misdemeanor.''

Upon examining these respective provisions of the Constitution and statute, we think their language is plain and definite to the effect that no person may operate a motor vehicle as a common carrier for hire on any public highway, street or alley within or without an incorporated city or between any fixed termini within the state without first having obtained a certificate of necessity and convenience from the corporation commission. To hold otherwise would require an addition to or subtraction from the precise terms of the law or a highly strained construction of the meaning of simple English words.

Defendant in this case, it is admitted, was operating a motor vehicle for the purpose set forth in the statute. It also appears that the only certificates of necessity and convenience under which it claimed to be operating were those issued to C. M. Menderson, as an individual, and always held by him in that capacity. It seems too clear for argument that those certificates were not sufficient to authorize defendant to engage in the business which it admits it was carrying on.

The statute specifically requires that an application for a certificate of necessity and convenience shall specify the name and the address of the applicant, shall contain the name of the grantee, and may not be assigned or transferred without an order of the commission. We think that only the grantee named in such certificate may engage in business as a common carrier for hire with motor vehicles by virtue thereof. Were this not the case, a certificate might be issued to a person whom the commission believed in every way thoroughly responsible and qualified to operate thereunder, and then some utterly irresponsible person or corporation might with the consent

of the grantee, actually engage in the business. If any damage resulted from the manner in which the business was conducted, or any indebtedness was incurred, the individual actually conducting it would be the only one responsible civilly or criminally therefor, while the original grantee, in case it seemed advisable to him, holding the certificate in his own name could again commence business through some "dummy" corporation or individual and go on indefinitely in such manner. We cannot believe that the legislature intended to allow any such situation to be possible, and that when it was said that the certificate must contain the name of the grantee, and that it might not be assigned or transferred without the consent of the commission, it meant that the person named in the certificate must be the responsible party engaged in such business in his own name, and that he could not in any manner without the consent of the commission make such certificate inure to the benefit of any other person or corporation.

Such being the case, the certificates of necessity and convenience outstanding in the name of C. M. Menderson, individually, in no manner authorized the Northeast Rapid Transit Company, a corporation, to engage in the business of common carrier for hire with motor vehicles upon any public highway, street or alley in the state of Arizona, and in such business, as set forth herein, it was violating section 741, *supra*, and liable to punishment therefor.

Nor would the permit granted at one time by the city commission to operate within the city of Phoenix be any protection to it, even were it still in effect. We have had before us in the case of *Clayton* v. *State*, 38 Ariz. 135, 297 Pac. 1037, the question as to the respective powers of the state and the self-governing cities of the state over streets and highways. We held therein as follows:

"The general powers conferred on the city by the freeholders' charter are those concerning municipal or local affairs. See cases above cited. [*Olson* v. *State*, 36 Ariz. 294, 285 Pac. 282; *State* v. *Missouri & Kansas Tel. Co.*, 189 Mo. 83, 88 S. W. 41; *Consumers' Coal Co.* v. *City of Lincoln*, 109 Neb. 51, 189 N. W. 643; *City of Sapulpa* v. *Land*, 101 Okl. 22, 223 Pac. 640, 35 A. L. R. 872.] The city does not assume under its charter all the powers that the state may exercise within its limits, but only powers incident to a city government. 'Rightful subjects' of legislation thereunder are therefore local or municipal concerns of the city. Under this grant of power the city cannot enter the field of general legislation, but must confine itself to the making of by-laws for its local government. In the latter field, under the Constitution so long as the legislation is in harmony with that instrument and the laws of the state it is valid and, under the provisions of section 398, Revised Code of 1928, prevails over state legislation conflicting therewith. If, however, a city by-law is not about a matter of municipal concern but a matter of general statewide concern, it would not be a 'rightful subject' of legislation, as defined by the general grant of power in the charter. The police power inheres in the state and not in its municipalities. The latter are agencies of the state and exercise police and other powers only by grant given either directly or by necessary implication. We think the broad grant of powers contained in sections 1 and 2, chapter IV of the Charter, should be, and was intended to be, limited to by-laws concerning purely municipal affairs.

"Who, then, determines whether the use of the streets and highways of the city by a person under the influence of intoxicating liquor is of general statewide concern or of purely municipal concern? Shall the city be permitted to determine this question, or shall the state?

"It is said, in *State* v. *Thompson*, 149 Wis. 488, 137 N. W. 20, 31, 43 L. R. A. (N. S.) 339, Ann. Cas. 1913C, 774: 'Where "sovereignty" or even "control" is by Constitution or statute distributed be-

tween the state and the city with reference to the subjects of regulation by each, if the city were sovereign in all "municipal affairs" and the state in all other affairs, still the city could not conclusively determine what affairs are "municipal," for to permit it to do so would be to confer upon the city an overlordship which would finally draw all power to the city. But in such case either one must have this power, and that one is the state. Under our American theory of the origin and office of Constitutions, the state may do this through its Legislature and judiciary. The former can create legal conditions, can make "affairs" municipal or state, as it deems wisest or most expedient.'

"To the same effect is *City of Sapulpa* v. *Land, supra* [101 Okl. 22, 223 Pac. 640, 35 A. L. R. 872].

"We have already seen that the state Legislature in the Highway Code (see title to original act, *supra*) has assumed 'to regulate the operation of vehicles on highways, and promote the convenience and safety of highway travel' and 'to provide penalties for violations of the provisions of this act.'

"While the Highway Code in many respects, as is shown by our analysis thereof, has delegated or left to municipalities certain powers over their streets and highways, it has by most direct and positive provision retained power to regulate the condition of drivers of motor vehicles in the use of the highways of the state, including those in cities and towns.

"Supplementing section 2 of article 13 of the Constitution, the Legislature, in section 398 of the Revised Code of 1928, has provided that in case of conflict the charter provisions shall prevail over existing laws and shall operate as a repeal or suspension of such laws to the extent of such conflict, but 'that such charter shall be consistent with and subject to the state constitution, and not in conflict with the constitution and laws relating to the exercise of the initiative and referendum and *other general laws of the state not relating to cities.*' (Italics ours.) This recognizes the supremacy of the 'general laws of the state not relating to cities.' The Highway Code is such a law. It does not relate to cities, but to the public highways of the state generally."

If the language used therein be true as to the Highway Code, we think it is equally true as to the law governing public service corporations. Article 3 of chapter 15, Revised Code of 1928 (section 736 et seq.), entitled "Regulation of public highway transportation," shows by its whole language and purpose that it is obviously intended to be a general law governing the operation of motor vehicles for hire over the entire state, and not merely one regulating such vehicles outside of cities, leaving their operation in cities as matters of purely municipal and local interest. Such being the case, we hold that the business of operating motor vehicles as common carriers for hire within the state, whether inside or outside of municipalities can be permitted and regulated under the Constitution and statutes by the corporation commission alone, except so far as mere local police regulations are concerned.

But it is urged by plaintiff that the proviso in article 15, section 3, of the Constitution, *supra,* authorizes incorporated cities to exercise supervision over public service corporations doing business therein. We have had the meaning of this proviso before us in the case of *Phoenix Ry. Co.* v. *Lount,* 21 Ariz. 289, 187 Pac. 933, and held that the legislature, by virtue of such proviso, might enact laws transferring the supervision of public service corporations, under the circumstances set forth in the proviso, from the corporation commission to the municipalities. We also held, however, that until legislation in pursuance of such proviso was adopted, that the municipalities had no such power, and that at the date of the decision last cited no such legislation had been enacted. Nor has there been any up to the present time. The sole control of public service corporations and individuals operating motor vehicles as common carriers for hire, except so far as purely

municipal police regulations are concerned, still rests in the corporation commission.

But it is contended by plaintiff that notwithstanding this power may rest in the corporation commission, the right to grant franchises to public utilities to occupy the streets and alleys of incorporated cities and towns still remains in the municipal authorities. We so held in *Phoenix Ry. Co.* v. *Lount, supra,* and we reaffirm the holding; but we cannot see where that has any bearing upon the present case. The use of the public streets and alleys of a city by a common carrier for hire in the same and no different manner than that in which those streets are used by ordinary citizens, is a common-law right which required affirmative action on the part of the proper authorities to take away. It is in no sense a "franchise." The word "franchise" implies a special privilege conferred by the government on individuals, which does not belong to the citizens generally by common right. *Bank of Augusta* v. *Earle,* 13 Pet. (38 U. S.) 519, 10 L. Ed. 274; *People's Passenger R. R. Co.* v. *Memphis R. R. Co.,* 10 Wall. (77 U. S.) 38, 19 L. Ed. 844. The "franchise" which is frequently granted by municipal corporations to public service corporations or to individuals for the use of the streets invariably carries with it the right to use them in a manner not available to ordinary citizens of common right, by placing structures therein such as street-car tracks, gas and water pipes, electric light poles, etc., which would in the absence of a franchise be an obstruction to the streets and a public nuisance. We think no case can be found holding that the mere use of public streets by a carrier for hire, which does not obstruct or occupy the streets in any manner except that authorized by common right to all citizens, requires a franchise. The permit granted by the city commission of Phoenix, and afterwards revoked by it, was

not a franchise, nor, indeed, was one required, and defendant may not justify its violation of section 736, *supra*, by its possession thereof.

The same rule follows in regard to the license first granted and then refused to it as a bus line. Whether such license might be legally required by the city or not is immaterial, for at most such requirement would be a revenue or police measure, and in no sense an authority for defendant to operate in violation of a state law.

Notwithstanding these facts, however, it may be contended that plaintiff was not entitled to injunctive relief for the reason that no property right belonging to it was invaded by defendant's conduct, and its sole remedy was a prosecution of a criminal action under section 741, *supra*. It is true the pleadings do not expressly show that defendant's conduct violated any of the property rights of the city, but it appears from the uncontradicted evidence in the record that the city of Phoenix owned and operated a street-car line, and that defendant's operations might diminish the revenue received by plaintiff from such line. We think this evidence showed the invasion of a property right of plaintiff's by defendant sufficient to justify the invocation of the equity powers of the court, and that the trial judge exercised a reasonable discretion in enjoining defendant from continuing such illegal competition.

The judgment of the superior court is affirmed.

McALISTER, C. J., and ROSS, J., concur.