[Civil No. 4516.  Filed October 11, 1943.]

[141 Pac. (2d) 852.]

CHARLES SHROPSHIRE, Appellant, v. F. C. PEERY, Appellee.

Messrs. Cox & Cox and Mr. George M. Sterling, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. Edward P. Cline, Assistant Attorney General, for Appellee.

ROSS, J.—The appellant, Charles Shropshire, a duly licensed plumbing contractor and a master plumber, was, on or about the 29th day of August, 1940, charged, in a verified complaint by one F. C. Peery filed with the Registrar of Contractors of the State of Arizona, H. C. Sparks, with violating, within the last two years, section 2866(c) of Chapter XV, entitled "Plumbing," of the Phoenix Municipal Code, reading as follows:

"(c) Any person, firm or corporation carrying on a business of plumbing as a master plumber, who shall allow his name or the name of his firm or corporation to be used by any other person, firm or corporation, directly or indirectly, to obtain a permit to install plumbing as required by this ordinance shall be guilty of a misdemeanor and upon conviction thereof shall be fined in a sum not to exceed Fifty Dollars ($50.00) or imprisonment in the City Jail for a period not to exceed thirty (30) days, and in addition to said fine or imprisonment his license to do business as a master plumber shall be canceled."

The authority for the Registrar of Contractors to entertain and prosecute this action is found in section 9, Chapter 104, Laws of 1933, section 67–809, Arizona Code 1939, and which it is charged was also violated by appellant. The material part of this section reads:

"Sec. 9. *Grounds For Revocation Of License.* The registrar of contractors may upon his own motion, and shall upon the verified complaint in writing of any person investigate the actions of any contractor within the state and shall have power to temporarily suspend or permanently revoke a license issued under the provisions of this act if the holder, while a licensee hereunder, is guilty of or commits any one or more of the following acts or omissions:

. . . . . . . . . . . . .

"(d) Wilful and deliberate disregard and violation of the building code . . . of the state or of any political subdivision thereof, or of the safety laws or labor laws of the federal government or of the state.

"(e) Failure to keep records showing all receipts and disbursements of the licensee in all of his transactions as a contractor as that term is defined in this act."

In the proceedings before the registrar, Shropshire interposed as a defense that he had theretofore been (1) tried on the same charges and acquitted, and (2) that section 2866(c) is in excess of the city's authority and is not a proper police regulation.

The registrar took the testimony of nine plumbers, both master and journeyman, on the question as to whether the appellant had in fact been guilty of allowing "his name . . . to be used by any other person, firm or corporation, directly or indirectly, to obtain a permit to install plumbing," section 2866(c), and these witnesses all testified that they knew appellant and were acquainted with his methods of doing business, that he used his master plumber's license to help others obtain permits to install plumbing and

as a consideration therefor took some of the profits of the business.

Appellant had been served with a subpoena *duces tecum* directing him to bring and submit his books and records for examination by the registrar but he failed and refused to produce them.

After the registrar had taken the evidence to sustain the charges against appellant, the latter was questioned by the registrar as to whether he kept books of his dealings and transactions and he refused to answer, under the instructions of his attorneys, on the ground that it would incriminate him.

The registrar in his decision, among others, made the following findings of fact:

"It is evident from the testimony that respondent has made it a practice of securing permits from the City of Phoenix for the installation of plumbing for journeyman plumbers for a specified fee; that respondent might be termed a 'broker' of permits. And the evidence shows that on many occasions the only connection that respondent had with jobs performed by journeyman plumbers was the securing of permits, and occasionally he would go on a job when difficulty arose with reference to the manner in which the plumbing was installed, and that on numerous jobs respondent never appeared or supervised any of the work; his sole interest being the amount of money he would receive for his procuring permits for the journeyman plumbers. . . .

"That on the 17th day of September, 1940 the respondent was served with a subpoena as a witness to testify in the above entitled case and to produce respondent's books of account or other records showing total receipts and disbursements, together with record of all persons employed by respondent from September 1, 1938, showing respondent's operations as a contractor and respondent was asked to produce said records of receipts and disbursements particularly on jobs for which he had secured permits from the City of Phoenix in his own name, and respondent

refused to do so contrary to the law and this violation in itself is grounds sufficient for revocation of respondent's license.''

Accordingly, the registrar revoked appellant's contractor's license.

Upon appeal to the superior court, after a hearing, that tribunal entered the following judgment:

''IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the said order appealed from is in full force and effect and that the contractor's license of Charles Shropshire numbered 3134-F issued to him by the Registrar of Contractors be and the same is hereby revoked and declared to be revoked.''

And it is from this judgment that the appeal is prosecuted.

The defenses urged before the registrar are relied upon here. Before the present complaint was filed with the registrar, another complaint containing four of the grounds of the present charge had been filed, heard and decided favorably to the appellant. However, in addition to such four grounds, there are now charged against appellant some six or seven other grounds for revocation of his license. We do not decide nor enter upon a discussion of the question whether the plea of former acquittal is good or not because, if it is, it goes only to four of the charges in the present complaint.

█ Next the validity of section 2866(c) is challenged on the ground of the lack of authority on the part of the city to pass it. Phoenix is a home-rule city, organized under Article 13 of the state Constitution. As such it has the right to enact any law for itself not in conflict with the Constitution of the United States or the Constitution of the state or the laws thereof. This power is granted by its Charter, Chapter IV, section 1. Section 2(64) of said chapter provides that its Commission shall have power:

"To enact appropriate legislation and do and perform any and all other acts and things which may be necessary and proper to carry out the general powers of the city or any of the provisions of this Charter; to exercise any and all powers not in conflict with the Constitution of the State, with this Charter, or with the ordinances adopted by the people of the city; to do and perform all acts required by the laws of the State; to exercise and carry into effect whenever deemed necessary or proper, any and all additional powers vested in the city or the Commission by the laws of the State."

█ So long as legislation by a home-rule city is confined to matters of municipal concern and is in harmony with the Constitution and laws of the state, it is valid. *Clayton* v. *State,* 38 Ariz. 135, 297 Pac. 1037; *Northeast Rapid Transit Co.* v. *City of Phoenix,* 41 Ariz. 71, 15 Pac. (2d) 951; *Luhrs* v. *City of Phoenix,* 52 Ariz. 438, 83 Pac. (2d) 283.

█ Nor do we think section 2866(c) violates any constitutional rights of the individual. The regulation of plumbing installations in a city is justified on the ground, principally, that such regulation is in the interests of the health and safety of the public. In 41 American Jurisprudence 662, section 2, it is said:

"While there is some divergence of opinion, the great weight of authority in this country is to the effect that the business of plumbing is so intimately connected with the public health, especially in large centers of population, as to be the proper subject of police regulation by the legislature or by municipal corporations and other local governmental units acting under delegated powers from the state. It is hardly open to question that defective plumbing and plumbing which is not skilfully executed or done upon proper scientific principles greatly endangers the health of the public in such localities, being conducive to the creation and spread of epidemic diseases of a virulent and dangerous character. And it follows that the state may impose restraint upon the business or work of

plumbers by any reasonable regulations calculated and necessary for the purpose of insuring a character of plumbing which will not endanger the safety or health of the public, or for the protection of the public against the dangers of careless and inefficient work, without infringing the constitutional right of the citizen to pursue such calling, or infringing other personal rights guaranteed by the Constitution. Under modern systems of housebuilding and disposal of sewage, the dangers to the health of the entire public, arising from defective plumbing, are so great, and at the same time so insidious, that were the state unable to provide for the proper regulation and supervision of the plumber in his work, so as to minimize the danger to the public health from the escape of sewer gas, it would be unable to protect the public life and health in a most important particular. . . . ''

It seems to us that the measure is in the interests of and for the protection of the public and that the city, under its police powers, had the right to enact it. It does not impinge the right, as contended, of journeyman plumbers to pursue their trade but does place the duty of proper and capable superintendence and inspection of such work upon a qualified and licensed master plumber and makes it unlawful for such master plumber to ''peddle'' his authority under his license to persons not qualified as plumbing contractors.

■ We think the judgment should be affirmed on the grounds that the appellant violated the provisions of section 2866(c) and section 9, Chapter 104, section 67–809, Arizona Code 1939, *supra,* and it is so ordered.

■ Perhaps we should call attention to the fact that the case is not entitled according to law. F. C. Peery was only the complaining witness and not a party to the action. The proceeding should have been entitled The State of Arizona against Shropshire.

McALISTER, C. J., and STANFORD, J., concur.