662 P.2d 157

**EL PASO NATURAL GAS COMPANY, a corporation, Plaintiff-Appellant,**

v.

**STATE of Arizona, Defendant-Appellee.**

**No. 1 CA–CIV 5675.**

Court of Appeals of Arizona, Division 1, Department B.

March 29, 1983.

Bilby, Shoenhair, Warnock & Dolph, P.C. by Harold C. Warnock and Stephen A. Thomas, Tucson, for plaintiff-appellant.

Robert K. Corbin, Atty. Gen. by Richard Kamps and James R. Redpath, Asst. Attys. Gen., Phoenix, for defendant-appellee.

OPINION

GREER, Judge.

In this case we determine whether the trial court properly ruled that El Paso Natural Gas Company (El Paso), rather than the State of Arizona, is liable for the expense incurred in relocating a natural gas pipeline, necessitated by the construction of a state highway. The facts necessary to a resolution of this matter, as stipulated to by the parties, are as follows.

In 1950 the Maricopa County Board of Supervisors (Board) granted El Paso a twenty-five year franchise to install and maintain its pipelines in the right of way of county highways, roads, streets and public alleys. In 1959 El Paso constructed a natural gas pipeline in the right-of-way of Price Road, a county highway. In 1960 the Board and the State of Arizona adopted a major street and highway plan for Maricopa County, including the future construction of what is now the Superstition Freeway.

In 1962 the Board adopted a resolution concurring with the recommendations of the state for the establishment of the freeway. Shortly thereafter the State Highway Commission established the freeway as state route number 360.

In 1971 the City of Tempe annexed that portion of Price Road which crossed the proposed location of the Superstition Freeway. In 1975 the county renewed El Paso's franchise for an additional twenty-five years, and the City of Tempe granted El Paso a license to maintain its Price Road pipeline. The new county franchise contained the following provision:

That all property of the distributing system be installed and operated by [El Paso] and shall be placed, removed or relocated ... in such manner and location as the Board of Supervisors or its duly authorized agents may designate. Such placement, removal or relocation shall be done at the sole expense of [El Paso] upon a determination by the Board of Supervisors of Maricopa County that such placement, removal or re-location is necessary.

The city license contained the following provision:

[I]f at any time the right-of-way or any portion thereof occupied and used by [El Paso] may be needed or required by the City of Tempe, this license may be revoked by the city and all rights thereunder terminated, and upon sufficient notice, [El Paso] shall remove all property belonging to [it].

The proposed construction of the Superstition Freeway necessitated the relocation of El Paso's pipeline from the Price Road right-of-way. In order to avoid undue delay in construction of the freeway, El Paso agreed to relocate the pipeline at its own expense, but reserved the right to file an action for declaratory judgment, seeking reimbursement of expenses incurred. After El Paso's complaint for declaratory judgment was filed, the trial court granted the state's motion for summary judgment, denying El Paso's request for reimbursement of expenses.

In their briefs, the parties discuss two theories upon which a utility might be held legally liable for the expense of relocating its facilities. Initially, the well settled common-law rule provides that a public utility accepts franchise rights in public streets subject to an implied obligation to relocate its facilities at its own expense, when required for a necessary public use. *New Orleans Gas Light Co. v. Drainage Commission of New Orleans,* 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831 (1905); *Paradise Valley Water Co. v. Hart,* 96 Ariz. 361, 395 P.2d 716 (1964); *Sanitary District No. 1 of Pima County v. State,* 1 Ariz.App. 45, 399 P.2d

179 (1965). We need not consider El Paso's argument that this common-law rule is inapplicable in the instant case, however, because we find that the alternative theory discussed by the parties resolves this matter.

El Paso admits that it could have been compelled by either Maricopa County or the City of Tempe to remove its pipeline at its own expense. We agree. The county franchise is particularly clear: "all property of the distributing system ... should be ... relocated ... at the sole expense of [El Paso]." El Paso seizes upon the specific language of the franchise and license and argues that, while the county or city could have required it to relocate the gas line at its own expense, the *state* could not. Because the only demand for relocation came from the state, El Paso reasons, it is not liable for the expenses incurred. While this line of reasoning may initially seem sound, it must fail when considered in light of the legal theory authorizing the county and city to grant utility franchises.

The relocation, construction, or reconstruction of highways clearly relates to the safety, security, and general welfare of the citizens of the state. It follows then, that all steps taken in furtherance thereof are matters within the police power of the state, as sovereign. *See State ex rel. Herman v. Schaffer,* 105 Ariz. 478, 467 P.2d 66 (1970). The power to grant a utility company a franchise is such an exercise of the state's police power. *Paradise Valley Water Co. v. Hart, supra; Sanitary District No. 1 of Pima County v. State, supra.*

Our supreme court held long ago that, "[t]he police power inheres in the state and not its municipalities. The latter are agencies of the state and exercise police and other powers only by grant given either directly or by necessary implication." *Northeast Rapid Transit Co. v. City,* 41 Ariz. 71, 79, 15 P.2d 951, 954–955 (1932); *see also County of Maricopa v. Anderson,* 81 Ariz. 339, 306 P.2d 268 (1957). It is by such implication that Maricopa County and the City of Tempe were authorized to contract with El Paso for the right to construct its

pipeline. In doing so, however, the county and city were acting as mere agents of the state. *Id.; City of Mesa v. Salt River Project Agricultural Improvement and Power District,* 92 Ariz. 91; or, 373 P.2d 722 (1962).

Viewed in this manner, we are persuaded by the thoughtful opinion of Justice Traynor in *Southern California Gas Co. v. City of Los Angeles,* 50 Cal.2d 713, 329 P.2d 289 (1958). In that case, the Southern California Gas Company had located gas lines in Los Angeles County pursuant to a county franchise. As part of the City of Los Angeles' sewer construction program, it was necessary for the gas company to relocate its lines. While the company recognized the common-law obligation implied in its franchise with the county to relocate its lines at its own expense when necessary for a proper governmental use of the streets, it argued that the city could not invoke such obligation. In ruling that the city could invoke the implied obligation of the contract, the court held:

> Such obligations rest on the paramount right of the people as a whole to use the public streets wherever located, and the fact that a franchise is granted by one political subdivision as an agent of the state does not defeat the right of another agent acting in its governmental capacity to invoke the public right for the public benefit.

*Id.* at 714, 329 P.2d at 291.

Moreover, application of the general laws of agency would allow the state, as principal, to invoke the provisions of the county franchise and city license.

Thus, we find that the trial court properly concluded that El Paso was required to relocate its pipeline at its own expense. Accordingly, the judgment of the trial court is hereby affirmed.

FROEB, P.J., and GRANT, J., concur.